UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| Conservation Law Foundation, Inc., | ) | Case No. _____ |
| Plaintiff, | ) | |
| v. | ) | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES** |
| Durham School Services, L.P., Durham Holding II, L.L.C., and National Express L.L.C, | ) | |
| Defendants. | ) | (Clean Air Act, 42 U.S.C. §§ 7401, *et seq*.) |

## **INTRODUCTION**

1.     This is a citizen enforcement suit brought by Conservation Law Foundation, Inc. ("Plaintiff" or "CLF"), on behalf of its individual members, to redress and prevent Clean Air Act violations that negatively affect the health and lives of Massachusetts residents by repeatedly exposing them to harmful air pollutants.

2.     Durham School Services, L.P., Durham Holding II, L.L.C., and National Express, L.L.C. (respectively "DSS," "Durham Holding II," and "National Express," or collectively "Defendants") own, operate, and/or manage a fleet of vehicles that travel and are housed in and around the Commonwealth of Massachusetts, including 42A Harlow Street, Worcester 01605 (the "Worcester Lot") and 103 South Street, Holyoke, MA 01040 (the "Holyoke Lot," collectively, the "bus lots").

3.     Defendants have repeatedly violated, are violating, and continue to violate the Clean Air Act ("CAA" or "Act") and the Massachusetts State Implementation Plan ("SIP"), specifically,

1

the Massachusetts motor vehicle idling limits contained within the federally enforceable Massachusetts SIP.

4.      Upon information and belief, Defendants have, on numerous occasions, caused, suffered, allowed, and/or permitted the idling of motor vehicles in excess of the five-minute time period allowed by 310 C.M.R. § 7.11(1)(b), and not in accordance with any exceptions listed in 310 C.M.R. § 7.11(1)(b)(1), (2), or (3).

5.      Neither DSS, Durham Holding II, nor National Express have taken actions sufficient to prevent future violations of the type alleged in this Complaint.

6.      Absent an appropriate order from this Court, Defendants are likely to repeat their violations of the Act as described below. Plaintiff intends this action to encompass post-Complaint violations of the types alleged in the Complaint.

## THE CITIZEN SUIT PROVISION OF THE CLEAN AIR ACT

7.      Congress has declared that the purpose of the Clean Air Act is "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population." 42 U.S.C. § 7401(b)(1).

8.      In the "citizen suit" provision of the Act, Congress authorized any person to commence a civil action against any person who is alleged to have violated (if there is evidence that the alleged violation has been repeated) or to be in violation of an emission standard or limitation under the Act. 42 U.S.C. § 7604(a)(1).

9.      The Act's definition of an "emission standard or limitation" includes any standard or limitation established "under any applicable State implementation plan approved by the Administrator." 42 U.S.C. § 7604(f)(4).

10.     The Act directs each state or local air pollution control agency to develop a State Implementation Plan ("SIP") that describes how it will achieve and maintain compliance with National Ambient Air Quality Standards ("NAAQS") set by the United States Environmental Protection Agency ("EPA") to protect human health and the environment. 42 U.S.C. § 7407(a).

11.     Standards or limitations established under any EPA-approved SIP are enforceable by citizens under the Act. 42 U.S.C. § 7604(f)(4).

12.     The Commonwealth of Massachusetts has an EPA-approved SIP that includes the regulation located at 310 C.M.R. § 7.11(1)(b) (the "Massachusetts idling regulation"), which prohibits the unnecessary operation of the engine of a motor vehicle while the vehicle is stopped for a period of time in excess of five minutes. 40 C.F.R. § 52; 37 Fed. Reg. 23,085.

13.     In this action, Plaintiff alleges Defendants have violated the Massachusetts idling regulation.

14.     The Clean Air Act's citizen suit provision provides the district courts of the United States with jurisdiction to "enforce" emission standards and limitations under the Act and to impose an appropriate civil penalty on the violator of those emissions standards and limitations. 42 U.S.C. § 7604(a).

## PARTIES

15.     Plaintiff Conservation Law Foundation ("CLF") is a nonprofit, member-supported, regional organization dedicated to protecting New England's environment. It is incorporated under the laws of Massachusetts with a principal place of business at 62 Summer Street, Boston, MA 02110. CLF has over 6,400 members, including 3,355 members in Massachusetts. CLF's mission includes safeguarding the health and quality of life of New England communities facing the adverse effects of air pollution.

3

16. CLF's members include individuals who live and recreate near the locations where vehicles owned, operated, and/or managed by DSS, Durham Holding II, and/or National Express idle in excess of five minutes.

17. The health, well-being, quality of life, and enjoyment of CLF members are harmed by Defendants' violations of the CAA.

18. "Person" in the CAA is defined to include "corporations." 42 U.S.C. § 7602(e). CLF is a corporation and thus a "person" under the CAA.

19. Defendant National Express is a transportation-focused corporation organized under the laws of the state of Illinois. It is the manager of Durham Holding II and the parent company of DSS. It does business within the Commonwealth of Massachusetts.

20. Defendant National Express is the North American subsidiary of National Express Group, PLC. National Express operates more than 22,500 school buses in 550 school districts in 34 states, serving more than 1.3 million students each day.

21. Defendant DSS is a corporation and school bus operator organized under the laws of the state of Illinois. It is a subsidiary of Defendant National Express. It does business within the Commonwealth of Massachusetts.

22. Defendant Durham Holding II is a corporation organized under the laws of the state of Illinois. It is a subsidiary of National Express. and the General Partner of DSS. It does business within the Commonwealth of Massachusetts.

23. The principal offices for DSS, Durham Holding II, and National Express are located at 2601 Navistar Drive in Lisle, Illinois 60532.

24. National Express exercises control over DSS and/or Durham Holding II's decarbonization and emissions reduction targets. National Express has set a formal target of an

exclusively net zero emission fleet for all its subsidiaries (including DSS and/or Durham Holding II) by 2040.

25.    National Express exercises control over DSS and/or Durham Holding II's employment policies. A centralized driver recruitment team at National Express has implemented standardized recruitment procedures for DSS and/or Durham Holding II, including driver incentive programs and referral and retention bonuses.

26.    National Express exercises control over DSS and/or Durham Holding II's operations, including requiring the implementation of the Driving Excellence quality management program and driving safety improvements, and requiring the use of specific operational technologies.

27.    National Express exercises control over DSS and/or Durham Holding II's compliance with environmental regulations.

28.    Upon information and belief, National Express actively participates in the finances, policies, and/or practices of DSS and/or Durham Holding II.

29.    Upon information and belief, Defendants and National Express Group, PLC utilize a centralized management structure, wherein National Express controls the policies and serves as the public-facing presence of its subsidiaries, including DSS and/or Durham Holding II.

30.    Upon information and belief, National Express, DSS, and Durham Holding II lack corporate independence.

31.    Defendants are persons within the meaning of Section 302(e) of the CAA, 42 U.S.C. § 7602(e).

## JURISDICTION, VENUE, AND NOTICE

32.    Subject matter jurisdiction is conferred upon this Court by 42 U.S.C. § 7604(a) (CAA citizen suit jurisdictional provision) and 28 U.S.C. § 1331 (federal question jurisdiction).

33.     Venue lies in this District pursuant to 28 U.S.C. § 1391(b) (federal venue provision) because vehicles owned, operated, managed and/or stored by Defendants were documented idling within this District and because the bus lots owned and/or operated by Defendants where idling occurred are located within this District.

34.     Plaintiff gave Defendants notice of the violations alleged in this Complaint more than 60 days prior to commencement of this lawsuit by a letter (the "Notice Letter") mailed to Gary L. Waits, Jr., Chief Operating Officer of National Express and DSS, and President of Durham Holding II. A copy of the Notice Letter is attached as Exhibit 1. The Notice Letter is incorporated by reference herein.

35.     Copies of the Notice Letter were also mailed to the Administrator of EPA, the Regional Administrator of EPA for Region 1, the Massachusetts Department of Environmental Protection ("MassDEP") Commissioner, and the EPA Citizen Suit Coordinator.

36.     Each of the addressees identified in the preceding paragraphs, including the Defendants, received the Notice Letter. A copy of each return receipt is attached as Exhibit 2.

37.     The Notice Letter satisfies the pre-suit notice requirements of the CAA, pursuant to 42 U.S.C. § 7604(b).

38.     Neither MassDEP nor EPA has commenced a civil action against Defendants in court to enforce vehicle anti-idling laws.

## STATUTORY AND REGULATORY BACKGROUND

39.     The provisions of the Commonwealth of Massachusetts idling regulation at 310 C.M.R. § 7.11(1)(b) are part of a federally enforceable SIP approved by EPA under section 110 of the CAA, 42 U.S.C. § 7410. 40 C.F.R. § 52; 37 Fed. Reg. 23,085.

40.     The Massachusetts idling regulation at 310 C.M.R. § 7.11(1)(b) provides:

No person shall cause, suffer, allow, or permit the unnecessary operation of the engine of a motor vehicle while said vehicle is stopped for a foreseeable period of time in excess of five minutes. 310 CMR 17.11 shall not apply to:

1. vehicles being serviced, provided that operation of the engine is essential to the proper repair thereof, or

2. vehicles engaged in the delivery or acceptance of goods, wares, or merchandise for which engine assisted power is necessary and substitute alternate means cannot be made available, or

3. vehicles engaged in an operation for which the engine power is necessary for an associated power need other than movement and substitute alternate power means cannot be made available provided that such operation does not cause or contribute to a condition of air pollution.

41.     As a federally enforceable SIP under section 113(b) of the Act, 42 U.S.C. § 7413(b), each separate violation of the Massachusetts idling regulation subjects the violator to a penalty of up to $109,024 per day per violation for all CAA violations occurring after November 2, 2015, where penalties are assessed on or after January 12, 2022. 40 C.F.R. §§ 19.2, 19.4.

### **FACTUAL BACKGROUND**

42.     Defendants own, operate, and/or manage, or have owned, operated, and/or managed, school buses across Massachusetts, including the school buses that serve or have served the Worcester and Holyoke public school districts.

43.     Vehicles owned, operated, and/or managed by Defendants make regular stops at multiple locations throughout the Commonwealth of Massachusetts, including at William G. Morgan School, located at 596 S. Bridge Street in Holyoke ("Morgan School").

44.     Vehicles owned, operated, and/or managed by Defendants are stored and/or maintained at bus lots in the Commonwealth of Massachusetts, including: 42A Harlow Street, Worcester, MA 01605 (the "Worcester Lot") and 103 South Street, Holyoke, MA 01040 (the "Holyoke Lot").

45. Defendants own, operate and/or manage vehicles, including diesel-fueled vehicles, that transport public school students between the ages of five and 18.

46. Diesel-fueled vehicles emit diesel fuel exhaust, which contains fine particulates, nitrogen oxides ($NO_x$), sulfur dioxide ($SO_2$), benzene, formaldehyde, and forty other kinds of toxic air contaminants.

47. Fine particulates have been found to impair lung function, aggravate respiratory illnesses such as asthma, bronchitis, and emphysema, and are associated with premature deaths.

48. Exposure to $NO_x$ can aggravate respiratory diseases, particularly asthma, and lead to respiratory symptoms such as coughing, wheezing, and difficulty breathing.

49. Longer exposures to elevated concentrations of $NO_x$ may contribute to the development of asthma and potentially increase susceptibility to respiratory infections.

50. People with asthma, as well as children and the elderly, are generally at greater risk for the health effects of $NO_x$.

51. The average national rate of asthma prevalence among school-age children in the United States is 7.2%, according to data produced by the Center for Disease Control and Prevention and available at https://www.cdc.gov/asthma/most_recent_national_asthma_data.htm.

52. Asthma prevalence among school-age children in the City of Holyoke was 19.9% during the 2016-2017 school year, according to Massachusetts Public Environmental Health Tracking conducted by the Bureau of Environmental Health of the Massachusetts Department of Public Health at https://matracking.ehs.state.ma.us/Health-Data/Asthma/index.html#MyPopup.

53. Asthma prevalence among school-age children in the City of Worcester was 14.8% during the 2016-2017 school year, according to Massachusetts Public Environmental Health

Tracking conducted by the Bureau of Environmental Health of the Massachusetts Department of Public Health at https://matracking.ehs.state.ma.us/Health-Data/Asthma/index.html#MyPopup.

54. Exposure to $SO_2$ can cause respiratory illness, aggravation of asthma, aggravation of existing cardiovascular disease, alteration in pulmonary defenses, and other adverse effects on breathing.

55. Exposure to high levels of $SO_2$ can cause chronic hypersensitivity to a wide range of pollutants which irritate the respiratory system.

56. Children, the elderly, and people with asthma, cardiovascular disease, or chronic lung disease (such as bronchitis or emphysema) are particularly vulnerable to the adverse effects of $SO_2$.

57. Benzene is a volatile organic compound ("VOC") and is designated as a Hazardous Air Pollutant under the Clean Air Act.

58. Benzene is a known human carcinogen. Benzene exposure can also cause neurological harm to humans and animals.

59. Exposure to formaldehyde can cause eye, nose, and throat irritation and can harm the nasal cavity.

60. Other effects of exposure to high levels of formaldehyde in humans are coughing, wheezing, chest pains, and bronchitis.

61. Longer exposures to elevated concentrations of formaldehyde have been associated with respiratory symptoms and eye, nose, and throat irritation.

62. EPA considers formaldehyde to be a probable human carcinogen (cancer-causing agent).

63.     Defendants cause, suffer, allow, and/or permit the emission of fine particulates, nitrogen oxides ($NO_x$), sulfur dioxide ($SO_2$), benzene, formaldehyde, and forty other kinds of toxic air contaminants into the atmosphere from the vehicles that they own, operate, and/or manage.

64.     Non-diesel, non-electric buses, including ethanol, propane, and compressed natural gas buses, emit harmful air pollutants.

65.     Defendants cause, suffer, allow, and/or permit the emission of fine particulates, nitrogen oxides ($NO_x$), sulfur dioxide ($SO_2$), benzene, formaldehyde, and forty other kinds of toxic air contaminants into the atmosphere from the Worcester Lot, the Holyoke Lot, and Morgan School.

66.     The pollutants which comprise vehicle exhaust have been linked with worse health effects from COVID-19.

67.     Particulate air pollution can facilitate the spread of COVID-19 infection, as the virus can travel further through the air and deeper into the lungs while "hitchhiking" on airborne particulates.

68.     Particulate air pollution can also make people more susceptible to COVID-19 infection and its most severe symptoms by causing or contributing to lung inflammation and chronic lung diseases.

69.     Studies have shown that a small increase in long-term exposure to fine particulates leads to a large increase in the COVID-19 death rate.

70.     Studies have linked exposure to high concentrations of $NO_x$ to deaths from COVID-19.

71.     The Challenge and Reach Worcester Public School and the University of Massachusetts Memorial Medical Center are within a half mile of the Worcester Lot.

72.    The University of Massachusetts Memorial Medical Center has a robust pulmonary care team consisting of medical professionals specializing in pulmonary disease and pediatric pulmonology.

73.    St. Bernard's Church and Adams Square Baptist Church are within a half mile of the Worcester Lot.

74.    Green Hill Park is located within a half mile of the Worcester Lot.

75.    Green Hill Park includes a golf course, zoo, arboretum, playgrounds, picnic areas, and football, softball, and soccer fields.

76.    According to the 2016-2020 American Community Survey (ACS) data, approximately 77,608 people live within two miles of the Worcester Lot.

77.    The Worcester Lot is located within an Environmental Justice area where 82 percent of residents identify as belonging to a minority group and the median household income is $48,129, according to the 2020 Environmental Justice Populations map, created in part by the Massachusetts Bureau of Geographic Information (MassGIS) and available at https://www.mass.gov/info-details/massgis-data-2020-environmental-justice-populations.

78.    William R. Peck Middle School is located within a mile of the Holyoke Lot and Morgan School.

79.    Holyoke High School – North Campus is within a mile of the Holyoke Lot and Morgan School.

80.    Holyoke Medical Center is located one mile from the Holyoke Lot and within a mile of Morgan School.

11

81.     Mackenzie Stadium, Roberts Field Sports Complex, Pouliot Pool, Fitzpatrick Ice Skating Rink, Sheard Park, and Springdale Park are located within a mile of the Holyoke Lot and Morgan School.

82.     The Children's Museum at Holyoke is located within a mile and a half of the Holyoke Lot and within a mile of Morgan School.

83.     First Baptist Church and Blessed Sacrament Catholic Church are located within a mile of the Holyoke Lot and within a mile and a half of Morgan School.

84.     According to the 2016-2020 American Community Survey (ACS) data, approximately 51,704 people live within two miles of the Holyoke Lot.

85.     The Holyoke Lot is located within an Environmental Justice area where 61.6 percent of residents identify as belonging to a minority group and the median household income is $40,769, according to the 2020 Environmental Justice Populations map, created in part by the Massachusetts Bureau of Geographic Information (MassGIS) and available at https://www.mass.gov/info-details/massgis-data-2020-environmental-justice-populations.

86.     The Carlos Vega Park, the Holyoke Library Park, the Veterans Memorial Park, Beachgrounds Park, Pulaski Park, and El Girasol Community Gardens are all located within a mile and a half of the Morgan School.

87.     The Boys and Girls Club of Greater Holyoke and the Bellamy Playground are both located within a mile of the Morgan School.

88.     Marcella R. Kelly Elementary School is located within a mile of the Morgan School.

89.     Tapestry Sexual and Reproductive Health Clinic is located less than a quarter mile from the Morgan School.

90.     According to the 2016-2020 American Community Survey (ACS) data, approximately 55,661 people live within two miles of Morgan School.

91.     Morgan School is located within an Environmental Justice area where 95.7 percent of residents identify as belonging to a minority group and the median household income is $23,594, according to the 2020 Environmental Justice Populations map, created in part by the Massachusetts Bureau of Geographic Information (MassGIS) and available at https://www.mass.gov/info-details/massgis-data-2020-environmental-justice-populations.

## DEFENDANTS' VIOLATIONS OF THE CLEAN AIR ACT

92.     On the dates listed below in separate paragraphs, an investigator observed vehicles idling in excess of five minutes for the following amounts of time in the following locations:

| Paragraph Number | Date | Location of Vehicle | Idling Start Time | Idling End Time | Duration of Idling | Excess Idling |
|---|---|---|---|---|---|---|
| 93. | 9/13/19 | Worcester Lot | 6:07 AM | 6:13 AM | 6 min | 1 min |
| 94. | 9/13/19 | Worcester Lot | 6:14 AM | 6:25 AM | 11 min | 6 min |
| 95. | 9/13/19 | Worcester Lot | 6:27 AM | 6:34 AM | 7 min | 2 min |
| 96. | 3/31/21 | Holyoke Lot | 5:59 AM | 6:34 AM | 35 min | 30 min |
| 97. | 3/31/21 | Holyoke Lot | 6:07 AM | 6:34 AM | 27 min | 22 min |
| 98. | 3/31/21 | Holyoke Lot | 6:50 AM | 6:56 AM | 6 min | 1 min |
| 99. | 3/31/21 | Holyoke Lot | 6:36 AM | 6:56 AM | 20 min | 15 min |
| 100. | 3/31/21 | Holyoke Lot | 6:36 AM | 6:57 AM | 21 min | 16 min |
| 101. | 3/31/21 | Holyoke Lot | 6:37 AM | 6:57 AM | 20 min | 15 min |
| 102. | 3/31/21 | Holyoke Lot | 6:43 AM | 6:57 AM | 14 min | 9 min |
| 103. | 3/31/21 | Holyoke Lot | 6:36 AM | 6:58 AM | 22 min | 17 min |
| 104. | 3/31/21 | Holyoke Lot | 6:39 AM | 6:53 AM | 14 min | 9 min |
| 105. | 4/1/21 | Worcester Lot | 5:48 AM | 6:45 AM | 57 min | 52 min |
| 106. | 5/19/21 | Worcester Lot | 6:15 AM | 6:23 AM | 8 min | 3 min |
| 107. | 5/19/21 | Holyoke Lot | 6:15 AM | 6:21 AM | 6 min | 1 min |
| 108. | 5/19/21 | Holyoke Lot | 6:23 AM | 6:31 AM | 8 min | 3 min |
| 109. | 5/19/21 | Holyoke Lot | 6:31 AM | 6:46 AM | 15 min | 10 min |
| 110. | 5/19/21 | Holyoke Lot | 7:56 AM | 8:06 AM | 10 min | 5 min |
| 111. | 5/19/21 | Holyoke Lot | 7:55 AM | 8:10 AM | 15 min | 10 min |
| 112. | 5/19/21 | Holyoke Lot | 7:55 AM | 8:10 AM | 15 min | 10 min |
| 113. | 6/2/21 | Holyoke Lot | 6:17 AM | 6:24 AM | 7 min | 2 min |
| 114. | 6/2/21 | Holyoke Lot | 6:34 AM | 6:42 AM | 8 min | 3 min |
| 115. | 6/2/21 | Holyoke Lot | 6:45 AM | 6:53 AM | 8 min | 3 min |

| | | | | | | |
|---|---|---|---|---|---|---|
| 116. | 6/2/21 | Holyoke Lot | 7:13 AM | 7:23 AM | 10 min | 5 min |
| 117. | 6/2/21 | Holyoke Lot | 7:42 AM | 7:56 AM | 14 min | 9 min |
| 118. | 10/20/21 | Holyoke Lot | 6:37 AM | 6:44 AM | 7 min | 2 min |
| 119. | 10/21/21 | Holyoke Lot | 6:02 AM | 6:17 AM | 15 min | 10 min |
| 120. | 10/21/21 | Holyoke Lot | 6:49 AM | 6:55 AM | 6 min | 1 min |
| 121. | 10/21/21 | Holyoke Lot | 6:52 AM | 7:00 AM | 8 min | 3 min |
| 122. | 11/18/21 | Holyoke Lot | 6:00 AM | 6:24 AM | 24 min | 19 min |
| 123. | 11/18/21 | Holyoke Lot | 6:08 AM | 6:19 AM | 11 min | 6 min |
| 124. | 11/18/21 | Holyoke Lot | 6:37 AM | 6:45 AM | 8 min | 3 min |
| 125. | 11/18/21 | Holyoke Lot | 6:45 AM | 6:54 AM | 9 min | 4 min |
| 126. | 11/18/21 | Holyoke Lot | 6:54 AM | 7:04 AM | 10 min | 5 min |
| 127. | 11/18/21 | Holyoke Lot | 6:56 AM | 7:07 AM | 11 min | 6 min |
| 128. | 12/9/21 | Holyoke Lot | 6:55 AM | 7:04 AM | 8 min | 3 min |
| 129. | 12/9/21 | Holyoke Lot | 6:59 AM | 7:07 AM | 8 min | 3 min |
| 130. | 12/9/21 | Holyoke Lot | 7:01 AM | 7:12 AM | 11 min | 6 min |
| 131. | 12/9/21 | Holyoke Lot | 7:06 AM | 7:14 AM | 7 min | 2 min |
| 132. | 12/10/21 | Holyoke Lot | 6:31 AM | 6:41 AM | 10 min | 5 min |
| 133. | 12/10/21 | Holyoke Lot | 6:48 AM | 6:56 AM | 7 min | 2 min |
| 134. | 12/10/21 | Holyoke Lot | 7:07 AM | 7:14 AM | 7 min | 2 min |
| 135. | 12/10/21 | Holyoke Lot | 7:08 AM | 7:16 AM | 8 min | 3 min |
| 136. | 12/10/21 | Holyoke Lot | 8:01 AM | 8:13 AM | 12 min | 7 min |
| 137. | 5/3/22 | Holyoke Lot | 6:12 AM | 6:19 AM | 7 min | 2 min |
| 138. | 5/3/22 | Holyoke Lot | 6:30 AM | 6:46 AM | 16 min | 11 min |
| 139. | 5/3/22 | Holyoke Lot | 6:57 AM | 7:03 AM | 6 min | 1 min |
| 140. | 5/3/22 | Holyoke Lot | 7:23 AM | 7:31 AM | 8 min | 3 min |
| 141. | 5/3/22 | Holyoke Lot | 7:23 AM | 7:31 AM | 8 min | 3 min |
| 142. | 5/3/22 | Holyoke Lot | 7:38 AM | 7:48 AM | 10 min | 5 min |
| 143. | 5/3/22 | Holyoke Lot | 7:39 AM | 7:48 AM | 9 min | 4 min |
| 144. | 5/13/22 | Holyoke Lot | 6:30 AM | 6:39 AM | 9 min | 4 min |
| 145. | 5/13/22 | Holyoke Lot | 6:40 AM | 6:46 AM | 6 min | 1 min |
| 146. | 5/13/22 | Holyoke Lot | 6:46 AM | 6:53 AM | 7 min | 1 min |
| 147. | 5/13/22 | Holyoke Lot | 7:06 AM | 7:13 AM | 7 min | 2 min |
| 148. | 5/13/22 | Holyoke Lot | 7:35 AM | 7:42 AM | 7 min | 2 min |
| 149. | 5/13/22 | Holyoke Lot | 7:41 AM | 7:49 AM | 8 min | 3 min |
| 150. | 6/6/22 | Holyoke Lot | 6:25 AM | 6:33 AM | 8 min | 3 min |
| 151. | 6/6/22 | Holyoke Lot | 6:45 AM | 6:52 AM | 7 min | 2 min |
| 152. | 6/6/22 | Holyoke Lot | 7:10 AM | 7:16 AM | 6 min | 1 min |
| 153. | 6/7/22 | Holyoke Lot | 6:46 AM | 6:54 AM | 8 min | 3 min |
| 154. | 6/7/22 | Holyoke Lot | 6:46 AM | 6:52 AM | 6 min | 1 min |
| 155. | 6/7/22 | Holyoke Lot | 7:01 AM | 7:07 AM | 6 min | 1 min |
| 156. | 6/7/22 | Holyoke Lot | 7:41 AM | 7:47 AM | 6 min | 1 min |
| 157. | 6/7/22 | Holyoke Lot | 8:08 AM | 8:33 AM | 25 min | 20 min |
| 158. | 6/13/22 | Morgan School | 3:12 PM | 3:37 PM | 25 min | 20 min |
| 159. | 6/13/22 | Morgan School | 3:19 PM | 3:37 PM | 18 min | 13 min |
| 160. | 6/13/22 | Morgan School | 3:26 PM | 3:37 PM | 11 min | 6 min |

| 161. | 6/17/22 | Worcester Lot | 6:06 AM | 6:37 AM | 31 min | 26 min |
|------|---------|---------------|---------|---------|--------|--------|
| 162. | 6/17/22 | Worcester Lot | 6:42 AM | 6:54 AM | 12 min | 7 min |
| 163. | 9/14/22 | Holyoke Lot | 6:28 AM | 6:36 AM | 8 min | 3 min |
| 164. | 9/14/22 | Holyoke Lot | 6:37 AM | 6:46 AM | 9 min | 4 min |
| 165. | 9/14/22 | Holyoke Lot | 6:40 AM | 6:52 AM | 12 min | 7 min |
| 166. | 9/14/22 | Holyoke Lot | 6:48 AM | 6:54 AM | 6 min | 1 min |
| 167. | 9/14/22 | Holyoke Lot | 6:49 AM | 6:56 AM | 7 min | 2 min |
| 168. | 9/14/22 | Holyoke Lot | 6:58 AM | 7:11 AM | 13 min | 8 min |
| 169. | 9/15/22 | Holyoke Lot | 6:30 AM | 6:38 AM | 8 min | 3 min |
| 170. | 9/15/22 | Holyoke Lot | 6:33 AM | 6:42 AM | 9 min | 4 min |
| 171. | 9/15/22 | Holyoke Lot | 6:35 AM | 6:42 AM | 7 min | 2 min |
| 172. | 9/15/22 | Holyoke Lot | 6:35 AM | 6:42 AM | 7 min | 2 min |
| 173. | 9/15/22 | Holyoke Lot | 7:01 AM | 7:08 AM | 7 min | 2 min |
| 174. | 9/15/22 | Holyoke Lot | 7:01 AM | 7:08 AM | 7 min | 2 min |
| 175. | 9/15/22 | Holyoke Lot | 7:26 AM | 7:32 AM | 6 min | 1 min |
| 176. | 9/15/22 | Holyoke Lot | 7:26 AM | 7:32 AM | 6 min | 1 min |
| 177. | 9/15/22 | Holyoke Lot | 10:00 AM | 10:12 AM | 12 min | 7 min |
| 178. | 9/16/22 | Holyoke Lot | 6:22 AM | 6:30 AM | 8 min | 3 min |
| 179. | 9/16/22 | Holyoke Lot | 6:26 AM | 6:32 AM | 6 min | 1 min |
| 180. | 9/16/22 | Holyoke Lot | 6:26 AM | 6:33 AM | 7 min | 2 min |
| 181. | 9/16/22 | Holyoke Lot | 6:29 AM | 6:35 AM | 6 min | 1 min |
| 182. | 9/16/22 | Holyoke Lot | 6:36 AM | 6:49 AM | 13 min | 8 min |
| 183. | 9/16/22 | Holyoke Lot | 6:36 AM | 6:45 AM | 9 min | 4 min |
| 184. | 9/16/22 | Holyoke Lot | 6:44 AM | 6:58 AM | 14 min | 9 min |
| 185. | 9/16/22 | Holyoke Lot | 6:45 AM | 6:53 AM | 8 min | 3 min |

186.    Plaintiff's investigator observed frequent and regular idling at the Worcester and Holyoke Lots between the hours of 5:00 am and 8:30 am on weekdays between September and June.

187.    On the four occasions that the Plaintiff's investigator visited the Worcester Lot, they observed idling in excess of five minutes.

188.    Plaintiff's investigator visited the Worcester Lot over three years. Each visit occurred during a different month (September, April, May, and June) and on three different days of the week (Wednesdays, Thursdays, and Fridays).

189. Defendants have had a pattern and practice of frequent and regular idling in excess of five minutes at the Worcester Lot on every day that the buses were operating from September 2019 through June 2022.

190. Upon information and belief, Defendants will continue to frequently and regularly idle vehicles at the Worcester Lot on every day that the buses operate.

191. On the 16 occasions that the Plaintiff's investigator visited the Holyoke Lot, they observed idling in excess of five minutes.

192. Plaintiff's investigator visited the Holyoke Lot regularly over a span of 18 months.

193. The visits took place during seven different months (September, October, November, December, March, May, and June) and on five different days of the week (Mondays, Tuesdays, Wednesdays, Thursdays, and Fridays).

194. Defendants have a pattern and practice of frequent and regular idling in excess of five minutes at the Holyoke Lot on every day that the buses were operating from March 2021 through September 2022.

195. Upon information and belief, Defendants will continue to frequently and regularly idle vehicles at the Holyoke Lot on every day that the buses operate.

196. Plaintiff believes that additional information from other sources not yet publicly available, including any technology installed in Defendants' buses which is capable of monitoring and recording excess idling, will reveal additional violations.

## PLAINTIFF AND ITS MEMBERS ARE HARMED BY DEFENDANTS' CLEAN AIR ACT VIOLATIONS

197. Plaintiff's members live, rent or own property, study and attend school, use transit, and/or spend time shopping, recreating, and conducting activities near the locations where

16

vehicles owned, operated, and/or managed by National Express, DSS, and Durham Holding II were observed idling.

198. Plaintiff's members reside in and around Holyoke and Worcester, Massachusetts.

199. Plaintiff's members include individuals who work and receive treatment for various health problems, including respiratory issues, at Holyoke Medical Center; who visit family and friends near the Holyoke Lot and Morgan School; and who patronize restaurants and shops near the Holyoke Lot and Morgan School.

200. Plaintiff's members include individuals who run outdoors and shop for groceries near the Worcester Lot.

201. Plaintiff's members breathe the emissions and air pollutants which Defendants cause, suffer, allow, or permit to be emitted from vehicles they own, operate and/or manage.

202. Plaintiff's members can observe or smell air pollution coming from vehicles owned, operated and/or managed by Defendants.

203. Plaintiff's members who live near and spend time at the parks, places of worship, cultural centers, transit stations, hospitals, and/or educational institutions near the locations where vehicles owned, operated, and/or managed by Defendants were observed idling have asthma, experience trouble breathing, and/or suffer from other respiratory symptoms.

204. Plaintiff's members are reasonably concerned about inhaling carcinogens and other pollutants emitted by vehicles owned, operated, and/or managed by Defendants.

205. Plaintiff's members want to breathe as little air pollution from vehicles owned, operated, and/or managed by Defendants as possible.

206. Plaintiff's members are reasonably concerned that the emissions released from vehicles owned, operated, and/or managed by Defendants have harmed, continue to harm and threaten,

17

and will harm and threaten their health, well-being, quality of life, and enjoyment, as well as that of their families.

207.     The greater the exposure to particulate matter, nitrogen oxides, sulfur dioxide, benzene, and formaldehyde, and the higher the levels of exposure, the more health and well-being are compromised.

208.     The actual and threatened harm to Plaintiff's members would be redressed by an injunction, civil penalty, and other relief that prevents or deters future violations of the Act by the Defendants and that requires the Defendants to offset their pollution from these violations by reducing their pollution or otherwise remediating harm that has already been caused to Plaintiff's members and their local communities.

## CLAIM FOR RELIEF

### Cause of Action:
### Violation of Massachusetts Idling Regulation

209.     Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

210.     The Massachusetts idling regulation at 310 C.M.R. § 7.11(1)(b) prohibits "the unnecessary operation of the engine of a motor vehicle while said vehicle is stopped for a foreseeable period of time in excess of five minutes."

211.     A bus, including the shuttle buses at issue here, is defined as a "motor vehicle" under 310 C.M.R. § 7.00.

212.     The Defendants caused, suffered, allowed, and/or permitted motor vehicles to operate unnecessarily while those vehicles were stopped for a foreseeable period of time in excess of five minutes. The operation of the engines of vehicles owned, operated, and/or managed by Defendants did not occur within any exceptions listed in 310 C.M.R. § 7.11(1)(b)(1), (2), or (3).

213.    The Defendants violated 310 C.M.R. § 7.11(1)(b), an applicable SIP provision, numerous times during specific incidents observed by an investigator in September of 2019, March, April, May, June, October, November, and December of 2021, and May, June, and September of 2022.

214.    The Defendants violated 310 C.M.R. § 7.11(1)(b), an applicable SIP provision, regularly and frequently on every morning that school was in session and buses were operating, since September 2019 at the Worcester Lot.

215.    The Defendants violated 310 C.M.R. § 7.11(1)(b), an applicable SIP provision, regularly and frequently on every morning that school was in session and buses were operating, since March 2021 at the Holyoke Lot.

216.    Pursuant to section 113(b) of the Act, 42 U.S.C. § 7413(b), and 40 C.F.R. §§ 19.2, 19.4, Defendants are liable for a civil penalty of up to $109,024 per day for each violation that occurred after November 2, 2015, where penalties are assessed on or after January 12, 2022.

## **RELIEF REQUESTED**

217.    Wherefore, Plaintiff respectfully requests that this Court grant the following relief:

(a) Declare Defendants to have violated and to be in violation of 310 C.M.R. § 7.11(1)(b) for causing, suffering, allowing and/or permitting motor vehicles to operate unnecessarily while those vehicles were stopped for a foreseeable period of time in excess of five minutes;

(b) Permanently enjoin the Defendants from causing, suffering, allowing, or permitting the idling of any motor vehicles in violation of 310 C.M.R. § 7.11(1)(b);

19

(c) Order Defendants to comply fully and immediately with 310 C.M.R. § 7.11(1)(b);

(d) Order Defendants to pay civil penalties of $109,024 per day for each violation for all CAA violations that occurred after November 2, 2015 and that are assessed on or after January 12, 2022;

(e) Order Defendants to take appropriate actions to remedy harm caused by Defendants' noncompliance with the Clean Air Act;

(f) Award Plaintiff's costs (including reasonable attorney, witness, and consultant fees) as permitted by Section 304 (d) of the Clean Air Act, 42 U.S.C. § 7406(d); and

(g) Award any such other and further relief as the Court may deem appropriate.

Respectfully submitted this 22nd day of November, 2022,

CONSERVATION LAW FOUNDATION, INC.,

By its attorneys,

_____
Chelsea E. Kendall (Bar #705513)
Heather A. Govern (Bar #688482)
Conservation Law Foundation, Inc.
62 Summer St.
Boston, MA 02110
(617) 850-1792
ckendall@clf.org


ATTORNEYS FOR PLAINTIFF